**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| LORETTA MAIER and SCOTT BIRDSELL on Behalf of Themselves and on Behalf of All Others Similarly Situated, | § § § § § | |
| *Plaintiff*, | § | CIVIL ACTION NO. 4:18-cv-991 |
| v. | § § | JURY TRIAL DEMANDED |
| PRIVATE MINI STORAGE MANAGER, INC., | § § | |
| *Defendant*. | § § | |

---

**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

Dated: July 2, 2019.

Respectfully submitted,

**EVERSHEDS SUTHERLAND (US) LLP**

By: */s/ Marlene C. Williams*
    Marlene C. Williams
    Attorney-in-Charge
    Texas State Bar No.: 24001872
    Federal ID No.: 22824
    1001 Fannin, Suite 3700
    Houston, Texas 77002
    (713) 470-6100
    (713) 654-1301 – Facsimile
    marlenewilliams@eversheds-sutherland.com

**OF COUNSEL:**
John T. Hays
Texas Bar No.: 24101885
Federal ID No.: 3015861
1001 Fannin, Suite 3700
Houston, Texas 77002
(713) 470-6100
(713) 654-1301 – Facsimile
johnhays@eversheds-sutherland.com

**ATTORNEYS FOR DEFENDANT**
**PRIVATE MINI STORAGE MANAGER, INC**.

## TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................................1

II. NATURE AND STAGE OF PROCEEDINGS ..................................................2

III. STATEMENT OF ISSUES ...................................................................................3

 A. Did PMSM fail to pay Plaintiffs additional overtime to which they were entitled?.....................................................................................................3

 B. Did PMSM fail to pay Plaintiffs the minimum wage for all hours worked?...........3

 C. Did PMSM retaliate against Birdsell in violation of the FLSA when it terminated his employment?...................................................................................3

 D. Did PMSM act willfully?.......................................................................................3

IV. STATEMENT OF UNDISPUTED FACTS .........................................................3

 A. PMSM's Business and The Property Manager Position.........................................3

 B. Maier's Employment with PMSM.........................................................................4

  1. Maier's Overtime Claim ...........................................................................7

  2. Maier's Minimum Wage Claim ................................................................8

 C. Birdsell's Employment With PMSM.....................................................................9

  1. Birdsell's Overtime Claim ......................................................................11

  2. Birdsell's Minimum Wage Claim ...........................................................12

  3. Birdsell's Termination and Retaliation Claim ........................................13

V. ARGUMENT AND AUTHORITIES.................................................................15

 A. Standard of Review..............................................................................................15

 B. Plaintiffs Bear the Burden of Proof on their FLSA Claims. ................................16

  1. Plaintiffs FLSA claims fail because they cannot establish having performed uncompensated work as a matter of "just and reasonable inference".................................................................................................16

  2. Maier and Birdsell Never Reported Unpaid Overtime Hours to PMSM...19

  3. Plaintiffs were not even aware their claims included alleged minimum wage violations. .....................................................................................22

 C. Birdsell Cannot Rely on Maier's Conduct to Establish his Retaliation Claim....................................................................................................................24

 D. Plaintiffs cannot prove that PMSM willfully violated the FLSA. ........................27

VI. CONCLUSION AND RELIEF SOUGHT ........................................................27

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Allen v. McWane, Inc.*,
   593 F.3d 449 (5th Cir. 2010) ...................................................................16

*Beliz v. W.H. McLeod & Sons Packing Co.*,
   765 F.2d 1317 (5th Cir. 1985) .............................................................23, 24

*Brumbelow v. Quality Mills, Inc.*,
   462 F.2d 1324 (5th Cir. 1972) ................................................................20

*Cabral v. Life Ambulance Serv., Inc.*,
   2007 WL 4365767 (W.D. Tex., November 15, 2007) .............................27

*Carman v. Meritage Homes Corp.*,
   2014 WL 4923759 (S.D. Tex. Sept. 30, 2014) ......................................22

*Carnaby v. City of Houston*,
   636 F.3d 183 (5th Cir. 2011) ..................................................................15

*Casey v. Livingston Parish Commc'ns. Dist.*,
   2009 WL 577756 (5th Cir. 2009) .......................................................24, 25

*Celotex Corp. v. Catreet*,
   477 U.S. 317 (1986).................................................................................15

*Cox v. Brookshire Grocery Co.*,
   919 F.2d 354 (5th Cir. 1990) ..................................................................27

*Donovan v. Mercer*,
   747 F.2d 304 (5th Cir. 1984) ....................................................................5

*Fairchild v. All American Check Cashing, Inc.*,
   815 F.3d 959 (5th Cir. 2016) .............................................................20, 22

*Forrester v. Roth's I.G.A. Foodliner, Inc.*,
   646 F.2d 413 (9th Cir. 1981) ..................................................................20

*Forsyth v. Barr*,
   19 F.3d 1527 (5th Cir. 1994) ..................................................................15

*Garner v. Chevron Phillips Chemical Company*,
   834 F.Supp.2d 528 (S.D. Tex. 2011) ......................................................19

*Harvill v. Westward Communications, L.L.C.*,
    433 F.3d 428 (5th Cir. 2005) ......................................................................16, 19

*Holt v. JTM Indus., Inc.*,
    89 F.3d 1224 (5th Cir. 1996) ..............................................................................26

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ............................................................................................15

*McLaughlin v. Richland Shoe Co.*,
    486 U.S. 128 (1988) ............................................................................................27

*Mortenson v. Western Light & Telephone Co.*,
    42 F. Supp. 319 (S.D. Iowa 1941) ......................................................................21

*Newton v. City of Henderson*,
    47 F.3d 746 (5th Cir. 1995) ................................................................................20

*Pineda v. JTCH Apartments, L.L.C.*,
    843 F.3d 1062 (5th Cir. 2016) ............................................................................25

*Scott v. Harris*,
    550 U.S. 372 (2007) ............................................................................................15

*Stokes v. BWXT Pantex, L.L.C.*,
    424 Fed. App'x 324 (5th Cir. 2011) ....................................................................27

*Thompson v. N. Am. Stainless, LP*,
    562 U.S. 170, 131 S.Ct. 863, 178 L.Ed.2d 694 (2011) .......................................25

*Valentine v. Harris County*,
    2005 WL 8167315 (S.D. Tex. 2005) ...................................................................21

*Von Friewalde v. Boeing Aerospace Operations, Inc.*,
    339 Fed. App'x. 448 (5th Cir. 2009) .............................................................16, 18

## STATUTES

29 U.S.C. § 206(a) ......................................................................................................16

29 U.S.C. § 207(a)(1).................................................................................................16

29 U.S.C. § 255(a) ......................................................................................................27

## OTHER AUTHORITIES

FEDERAL RULES OF CIVIL PROCEDURE Rule 56 ......................................................1, 15

iv

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| LORETTA MAIER and SCOTT BIRDSELL on Behalf of Themselves and on Behalf of All Others Similarly Situated, | § § § § | |
| | § | |
| *Plaintiff*, | § | CIVIL ACTION NO. 4:18-cv-991 |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| PRIVATE MINI STORAGE MANAGER, INC., | § § | |
| | § | |
| *Defendant*. | § | |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant Private Mini Storage Manager, Inc. ("PMSM" or "Private Mini Storage Manager") files this Motion for Summary Judgment pursuant to Rule 56 of the FEDERAL RULES OF CIVIL PROCEDURE. In support, Private Mini Storage Manager respectfully shows as follows:

### I.      INTRODUCTION

This is a Fair Labor Standards Act ("FLSA") case. Plaintiffs' claims in this case rely entirely on their own self-serving assertions that are contradicted by the time records they certified to PMSM throughout their employment. As shown below, Plaintiffs lived and worked at their storage facility alone and expressly agreed that their bi-weekly wages included overtime premiums based on a 45-hour workweek. Plaintiffs' also expressly agreed that, in the event they exceeded 45 hours in any workweek, they would report any alleged unpaid overtime hours to PMSM immediately. On the rare occasion Plaintiffs actually reported additional overtime hours, PMSM properly paid them for the reported hours. Plaintiffs' testimony illuminates the fact that they do not have any personal knowledge of the alleged uncompensated overtime hours they worked. On

1

the one hand, Plaintiffs allege that their claims are based on the operating hours of the storage facility. However, when presented with evidence disproving this theory, both Plaintiffs' simply said that they routinely worked before and after operating hours each week and that those hours form the basis of their overtime claims. Plaintiffs' testimony in this regard is literally a guess that they each showed up to work about an hour early in the morning and stayed about an hour after the facility closed. However, assuming Plaintiffs' assertions are credible, they never notified PMSM regarding the additional alleged uncompensated hours, a fact which is fatal to their overtime and minimum wage claims. Birdsell's retaliation claim is equally untenable considering he never engaged in any protected activity and, instead, merely attempts to prop up his retaliation claim with his spouse's lawsuit with which he took no part until after PMSM terminated him for workplace misconduct. Plaintiffs' claims are simply not credible and the Court should dismiss them with prejudice.

## II.        NATURE AND STAGE OF PROCEEDINGS

Plaintiff Loretta Maier ("Maier") initiated this lawsuit on April 14, 2018.  *See* Dkt. No. 1. Plaintiff Scott Birdsell ("Birdsell") joined this lawsuit as a named plaintiff on July 3, 2018 when Plaintiffs filed their First Amended Petition. *See* Dkt. No. 14. Plaintiffs initially filed this lawsuit as a collective action seeking to certify a class of all PMSM property managers for its storage warehouses and RV Parks. However, because Plaintiffs' never worked as property managers at PMSM's RV parks they agreed to amend their request for certification to only include property managers who worked at PMSM storage warehouses. PMSM did not contest certification based on Plaintiffs' revised class. On August 27, 2018, the Court granted Plaintiffs' Unopposed Motion for Conditional Certification. *See* Dkt. No. 19. No one opted into this case. *See* Docket Report for 4:18-CV-991 reflecting no opt-ins. Accordingly, Plaintiffs' claims against PMSM proceeded individually. Plaintiffs allege that PMSM failed to pay them the required minimum wage for an

2

undisclosed period of their employment[1] and denied them overtime to which they were entitled under the FLSA. Birdsell also claims that PMSM retaliated against him in violation of the FLSA when it learned that his wife, Maier – who was no longer a PMSM employee – filed this lawsuit against PMSM. PMSM filed its initial answer denying all of Plaintiffs' claims on September 4, 2018.  *See* Answer, Dkt. No. 11.  PMSM filed its answer to Plaintiffs' Second Amended Complaint on December 14, 2018. *See* Dkt. No. 26. Discovery in this matter closed on July 26, 2019.  PMSM now files this Motion for Summary Judgment and requests that the Court dismiss Plaintiffs' claims, in their entirety, with prejudice.

### III.     STATEMENT OF ISSUES

**A.**     Did PMSM fail to pay Plaintiffs additional overtime to which they were entitled?

**B.**     Did PMSM fail to pay Plaintiffs the minimum wage for all hours worked?

**C.**     Did PMSM retaliate against Birdsell in violation of the FLSA when it terminated his employment?

**D.**     Did PMSM act willfully?

### IV.     STATEMENT OF UNDISPUTED FACTS

**A.     PMSM's Business and The Property Manager Position**

PMSM is a Texas corporation that offers convenient and affordable self-storage options in Houston, Texas. *See* Declaration of Douglas Mulvaney ("Mulvaney Dec at ¶ __") attached as Exhibit A at ¶ 3. Until recently, PMSM operated a chain of storage locations throughout the United States. Mulvaney Dec. at ¶ 3. At its peak, PMSM owned and operated 85 storage facilities

---

[1] Plaintiffs' Second Amended Complaint (the "Complaint") is less than clear regarding to which Plaintiff the minimum wage allegations apply. Specifically, Plaintiff expressly claims that PMSM denied Maier the minimum wage for an undisclosed period of her employment. *See* Dkt No. 25 at ¶ 51. However, Plaintiffs' Complaint does not include similar allegations related to Birdsell. *See id.* Moreover, as indicated below, neither Maier nor Birdsell testified that PMSM failed to pay them a minimum wage.

3

nationwide, 35 of which were in the Houston area. *Id.* Presently, only one PMSM storage location remains operational as the rest have either sold or closed. *Id.*

PMSM employs Property Managers, like Maier and Birdsell, at each of its storage facilities. *Id.* at ¶ 4. Property Managers manage the day-to-day operations for the storage facility including renting storage spaces, renting U-Haul trucks and trailers, and generally maintaining the property and equipment with regard to the storage units and U-Haul vehicles. *Id. see also* Excerpts from the Deposition Transcript of Loretta Maier ("Maier Dep. at __") at 21:4-17 attached as Exhibit B and Excerpts from the Deposition Transcript of Scott Birdsell ("Birdsell Dep. at __") at 21:18-22:11 attached as Exhibit C. Additionally, most of the Property Managers PMSM assigned to its storage facilities were married, and lived onsite in housing PMSM provided. *See* Mulvaney Dec. at ¶ 4. During the timeframe at issue in this matter, Maier and Birdsell managed PMSM's storage facility on Airport Road in Houston (the "Airport Facility"). Mulvaney Dec. at ¶ 4.

**B.    Maier's Employment with PMSM.**

PMSM hired Maier as a property manager for the first time in 2008. Maier Dep. at 101:12-15. Maier worked for PMSM as a property manager (along with Birdsell) from 2008 until PMSM closed the property to which it assigned her in December 2013. *Id.* at 135:7-10. Maier was not an employee of PMSM from December 2013 through April 2015.[2] In April 2015, PMSM rehired Maier as a property manager to manage the Airport Facility with Birdsell.[3] *Id.* at 12:11-21; 135:11-13.

---

[2] Maier oddly, and erroneously, contends that she remained an employee of PMSM during this timeframe. *See* Maier Dep. at 11:16-20. However, PMSM terminated her employment when it closed her property and took her off of the payroll during that time.

[3] As explained in more detail below, PMSM did not terminate Birdsell when it closed his property in December 2013. Instead, PMSM assigned Birdsell to a separate part of its business as a district manager of its RV Parks.

On April 23, 2015, Maier executed her employment agreement with PMSM that described the details of her position as a property manager. Maier Dep. at 36:4-18 *see also* Maier Employment Agreement attached as Exhibit D. Maier lived with Birdsell in the housing PMSM provided at the Airport Facility. Maier Dep. at 33:6-8. Maier's employment agreement described her compensation as a property manager in detail. *See* Exhibit D. Maier acknowledged that she would have ample time to engage in personal activities during the normal operating hours of the Airport Facility. *Id.*[4] Maier also agreed that 45 hours was a reasonable estimate of the time she would spend at work each week based on her duties and because she lived on the premises.[5]

Maier's employment agreement also established the parties' understanding regarding her compensation. *See* Exhibit D. *See also* Maier Dep. at 40:18-41:18. Specifically, Maier's employment agreement indicated that she would receive $338.23, on a bi-weekly basis, as compensation "for all hours worked." ("Maier's Weekly Wage") *See* Exhibit D. PMSM expressly included a provision for overtime, based on the U.S. Department of Labor's Wage and Hour Divisions Overtime Coefficient table, to include additional half-time premiums for the five agreed overtime hours Maier was to work each week. *Id.*[6] Maier testified that PMSM properly paid her the agreed five hours of overtime each week based on her employment agreement. Maier Dep. 87:20 – 89-7.

---

[4] Maier testified that she never reviewed the employment agreement and, therefore, does not have any knowledge of the agreements she reached with PMSM regarding her employment. *See* Maier Dep. at 39:1-7. However, whether Maier actually read the agreement or now claims to have no knowledge of its contents is immaterial since signatories to a written instrument are deemed to have knowledge of the contents therein. *Donovan v. Mercer*, 747 F.2d 304, 309 fn 4 (5th Cir. 1984)(internal citations omitted)(". . . long standing and generally accepted principle of contract law that, absent fraud or mental incompetence, a person who intentionally signs a document is bound by its contents, whether or not he in fact read the document.")

[5] PMSM did not pluck an arbitrary number from thin air and place it in Maier's employment agreement. Instead, PMSM hired third-party consultants to study the work requirements of its storage facility property managers to establish an fair estimate of the number of hours each storage property manager would work on a weekly basis. *See* Mulvaney Dec. at ¶ 6.

[6] The U.S. Department of Labor Wage and Hour Division Overtime Coefficient chart is available at: https://www.dol.gov/whd/forms/CoefficientTableWH-134.pdf, last visited June 19, 2019.

Maier's compensation plan also included a monthly bonus, which PMSM included in Maier's wages ("Maier's Bonus Plan"). *See* Maier's Bonus Plan attached as Exhibit E. Maier's Bonus Plan specifically incorporated the terms and conditions of Maier's employment agreement in the bonus plan including a provision for calculating overtime on Maier's monthly bonus according to the same DOL coefficient table. *Id.* Therefore, PMSM included Maier's monthly bonus as wages and calculated overtime into Maier's bonus based on the number of hours Maier certified each week. *See* Maier Dep 87:9-12.

Maier also acknowledged that if she worked additional hours beyond the contemplated 45-hour workweek in the employment agreement, she must "immediately notify PMSM in writing of such changed conditions." *See* Exhibit D. To that end, PMSM provided Maier with a weekly payroll certification form to report any additional hours so that PMSM could adjust her compensation for that workweek. *See* Maier's Payroll Certifications attached as Exhibit F.  *See also* Maier Dep. at 54:10-18. Maier testified that she *never* filled out her payroll certifications. *Id.* at 55:2-25. Instead, Maier testified that she authorized Birdsell to complete her payroll certification forms and submit them on her behalf. *Id.* at 40:10-13; 56: 1-4. *See also* Birdsell Dep. at 99:11-101:9.

Maier's testimony regarding the payroll certification forms is all over the map. On the one hand, Maier claimed complete ignorance regarding PMSM's policy for reporting additional hours. Maier Dep. at 40:4-17. On the other hand, Maier testified that PMSM instructed her to annotate when she worked at a different property. *Id..* at 65:3-16; 65:20-68:4. Maier did testify that the payroll certification forms unambiguously required her to report any hours beyond the 45 contemplated in her employment agreement. *Id.* at 111:16-21. Maier also testified that despite the clear instructions in the payroll certification forms, she never reported any additional hours. *Id* at

40:14-17. Instead, Maier testified that she occasionally reported cleaning at a separate facility on her payroll certification forms. *Id.* at 70:21-73:7. Maier also testified that she received a monthly bonus of $425 during each month she helped clean the 1464 Shopping Center Location. *Id.* at 73:2-10; 74:3-12. Further, Maier testified that she was free to clean the 1464 Shopping Center during her normal work schedule but she decided, on her own, to clean the shopping center before or after the normal operating hours of the Airport Facility. *Id.* at 71:18-72:14; 75:11-77:24. Bottom line, Maier acknowledged that her employment agreement and payroll certification forms clearly indicate how she was to report additional hours – but she never did. Maier's only argument as to why she did not report her alleged additional hours is her own vague and self-serving testimony that a PMSM employee instructed her to simply write in when she worked at a separate facility.

### 1. Maier's Overtime Claim

Maier bases her overtime claim in the Complaint and responses to discovery on the operating hours for the Airport Facility. *See* Complaint at ¶¶ 39-40. *See also* Maier's Responses to PMSM's First Set of Interrogatories attached as Exhibit G.[7] Maier's alleged damage calculation is also based on the operating hours of the Airport Facility. *See* Plaintiffs' Disclosures attached as Exhibit H. Maier's overtime allegation is simple, the Airport Facility is open for 63 hours per week and she worked the entire 63 hours each week. However, Maier also testified that she regularly had a full weekday off during each workweek.[8] Maier could not recall a single workweek from April 2015 until her termination in July 2017 that she did not have at least one day off. Maier Dep. at 45:3-13; 47:1-9. Therefore, assuming she was actually working the entire time the Airport Facility was open the remaining days, the absolute most she could have worked in a single

---

[7] Maier testified that she **never** reviewed her own responses to PMSM's interrogatories until she reviewed them the day before her deposition. Maier Dep. at 106:25 – 107:25.
[8] The Airport Facility was open from 8:30 AM to 6:30 PM, Monday through Friday for a total of 10 hours.

workweek is 53 hours – not 63 as alleged. Maier Dep. at 43:7-45:20. Maier also testified that she occasionally had two weekdays off from work in which case – assuming she worked all remaining operating hours for the remaining workdays – only leaves 43 hours.[9] Maier Dep. at 47:20-48:4.

According to Maier's Complaint and discovery responses, she would always work 10 hours of overtime during workweeks which she had one day off and 20 hours of overtime for every workweek she had two days off. Maier does not have any record, other than her own self-serving statements, that she always worked this much overtime. Maier Dep. at 105:7-12. In fact, Maier retreated from the allegations in the Complaint and discovery responses during her deposition and stated, that her overtime claim is actually based on her belief that she worked before and after the normal operating hours of the Airport Facility. Maier Dep. at 17:16-25; 48:1-52:5. At the end of the day, Maier testified that she did not have any personal knowledge of her overtime allegations and, instead, relied on her attorney to invent those numbers for her. Maier Dep. at 110:9-14. Therefore, the only contemporaneous records of Maier's work activities from April 2015 to July 2017 are her weekly payroll certifications, which clearly indicate that she never reported working more than the 45 hours contemplated in her employment agreement. *See* Exhibit F.

### 2.  Maier's Minimum Wage Claim

Maier alleges in the Complaint that PMSM failed to pay her the minimum wage for an unspecified period of her employment. *See* Complaint at ¶ 51. Maier bases her minimum wage claim against PMSM on the same counterfactual allegation in her overtime claim – that she worked 63 hours per week. *Id.* However, as previously noted, Maier could not recall a single workweek where she did not have at least one or two full days off. Maier Dep. at 45:3-13; 47:1-4; 150:15-18.

---

[9] PMSM did not deduct from Maier's pays during workweeks she did not work the full 45 hours. Likewise, PMSM did not deduct for other time Maier did not work, such as vacations. In fact, Maier indicated when she took vacations on her payroll certifications and PMSM paid her for the full 45 hours called for in her employment agreement.

Therefore, the most Maier could have worked, assuming she worked the remaining operating hours for the Airport Facility (which PMSM denies), is 53 hours. Maier does not claim that her pay dropped below the minimum wage during weeks she worked 53 hours. Indeed, Maier had no clue that her lawsuit included a claim against PMSM for minimum wage violations much less any personal knowledge regarding when her pay allegedly dropped below the minimum wage based on the number of hours she worked. Maier Dep. at 133:14-134:8.

      C.    **Birdsell's Employment With PMSM.**

Like Maier, PMSM hired Birdsell as a property manager for one of its storage facilities in 2008. Birdsell Dep. at 6:2-4. Birdsell testified that he left employment with a previous storage business because PMSM offered better pay, ***including overtime***, which he did not receive from his previous employer. Birdsell Dep. at 6:21-8:14. Birdsell worked as a property manager until PMSM closed his storage property in December 2013. Birdsell Dep. at 14:8-20. Unlike Maier, PMSM reassigned Birdsell to a District Manager position for its RV parks. Birdsell Dep. at 15:8-16:15. Birdsell worked for PMSM as a district manager for its RV parks from December 2013 to April 2015. In April 2015, PMSM opened the Airport Facility and reassigned Birdsell to run that property with Maier as Property Managers. Birdsell Dep. at 17:6-9. Birdsell managed PMSM's Airport Facility from April 2015 until PMSM terminated his employment on June 6, 2018.

Like Maier, Birdsell signed an employment agreement with PMSM. *See* Birdsell's Employment Agreement attached as Exhibit I. *See also* Birdsell Dep. at 95:11-96:4. Birdsell acknowledged that he would live onsite with Maier and have time to engage in purely personal endeavors during the normal operating hours of the business. *See* Exhibit I. In that regard, Birdsell also acknowledged that 45 hours was a reasonable estimate of number of hours he would work each week as a property manager for the Airport Facility. *Id.* Birdsell also acknowledged that, in

the event his hours exceeded 45 hours in a single workweek, he would immediately notify PMSM in writing to allow PMSM to adjust his compensation for that workweek. *Id.*

Birdsell's employment agreement expressly stated the details of his compensation. Specifically, Birdsell's employment agreement indicated that he would receive $338.23 on a bi-weekly basis, as compensation "for all hours worked." ("Birdsell's Weekly Wage") *Id.* PMSM expressly included a provision for overtime, based on the U.S. Department of Labor's Wage and Hour Divisions Overtime Coefficient table, to include additional half-time premiums for the five agreed overtime hours Birdsell was to work each week. *Id.* Birdsell testified that PMSM properly paid him the agreed five hours of overtime each week based on his employment agreement. Birdsell Dep. 105:3-12.

Birdsell's compensation plan also included a monthly bonus, which PMSM included in Birdsell's wages ("Birdsell's Bonus Plan"). *See* Birdsell's Bonus Plan attached as Exhibit J. Birdsell's Bonus Plan specifically incorporated the terms and conditions of his employment agreement including a provision for calculating overtime on his monthly bonus according to the same DOL coefficient table. *Id.* Therefore, PMSM included Birdsell's monthly bonus as wages and calculated overtime into his bonus based on the number of hours Birdsell certified each week. *See* Birdsell Dep. 142:1-3.

Like Maier, PMSM also required Birdsell to submit a payroll certification for each workweek to report any hours he worked beyond the 45 hours contemplated in his employment agreement. Birdsell Dep. at 90:12-20. Birdsell testified that PMSM initiated the payroll certification form sometime in 2013, during his first tenure as a PMSM property manager. Birdsell Dep. 90:23-91:12; 92:18-24. Birdsell also testified that in 2013, Morgan Smith instructed him to fill out the forms for hours he worked at another property. Birdsell Dep. at 101:12-102:7. However,

on the rare occasion Birdsell actually reported additional hours to PMSM, he expressly reported 3.5 hours at another facility to fill in for a property manager that was ill. *See* Birdsell Dep. at 120:8-121:9. *See also* Birdsell Certification Form attached as Exhibit K.[10] Birdsell also testified that PMSM's payroll coordinator acknowledged Birdsell's extra hours and coordinated his additional pay. *See* Email from Deanna Battles to Birdsell attached as Exhibit L. *See also* Birdsell Dep. at 123:5-125:9. Upon review, Birdsell changed his testimony and indicated that it was not for reporting payroll hours at all but, instead, was used to report to PMSM hours that he spent away from the Airport Facility. Birdsell Dep. at 126:5-127:11.

### 1.      Birdsell's Overtime Claim

Like Maier, Birdsell's overtime claim in the Complaint is based on the notion that he worked all 63 weekly operating hours at the Airport Facility. Complaint at ¶¶ 39-40. Birdsell's alleged damage calculation is also based on the operating hours of the Airport Facility. *See* Exhibit H. Birdsell's overtime allegation is simple, the Airport Facility is open for 63 hours per week and he worked the entire 63 hours each week. However, Birdsell also testified that he regularly had a full weekday off during each workweek. Birdsell Dep. at 70:25-71:4.  In fact, Birdsell could not recall a single workweek from April 2015 until his termination in June 2018 that he did not have at least one day off. Birdsell Dep. at 71:19-24. Therefore, assuming he was actually working the entire time the Airport Facility was open the remaining days, which PMSM denies, the absolute most he could have worked in a single workweek is 53 hours – not 63 as alleged. Birdsell Dep. at 169:11-25. Birdsell also testified that he occasionally had two weekdays off from work in which

---

[10] Specifically, the May payroll certification form is Bates Labeled PMSM000817.

11

case – assuming he worked all remaining operating hours for the remaining workdays – he only could have worked 43 hours.[11] Birdsell Dep. at 170:1-7.

According to Birdsell's Complaint and discovery responses, he would always work 10 hours of overtime during workweeks which he had one day off and 20 hours of overtime for every workweek he had two days off. Birdsell does not have any record, other than his own self-serving statements, that he always worked this much overtime. In fact, Birdsell retreated from the allegations in the Complaint and discovery responses during his deposition and stated that his overtime claim is actually based on his belief that he worked before and after the normal operating hours of the Airport Facility. Birdsell Dep. at 144:21-145:23, 166:22-171:24. However, the only contemporaneous records of Birdsell's work activities from April 2015 to June 2018 are his weekly payroll certifications, which clearly indicate that he rarely worked more than the 45 hours contemplated in his employment agreement and PMSM properly compensated him for additional hours he reported.

### 2. Birdsell's Minimum Wage Claim

It is unclear whether Plaintiffs' Complaint includes a minimum wage claim for Birdsell. *Compare* Complaint at ¶ 51 (describing only Maier's minimum wage allegation) and Complaint at ¶¶ 82-85 (claiming minimum wage violations apply to "Plaintiffs and Class Members"). However, to the extent Birdsell claims PMSM denied him the minimum wage, his allegations are identical to Maier. That is, the Complaint generally alleges that PMSM failed to pay Birdsell the minimum wage for an unspecified period of his employment. Birdsell bases his minimum wage claim against PMSM on the same counterfactual allegation in his overtime claim – that he worked

---

[11] PMSM did not deduct from Birdsell's pay during workweeks he did not work the full 45 hours contemplated in his employment agreement. Likewise, PMSM did not deduct for other time Birdsell did not work, such as vacations. In fact, Birdsell indicated when he took vacations on his payroll certifications and PMSM paid him for the full 45 hours called for in his employment agreement.

a minimum of 63 hours per week. *Id.* However, as previously noted, Birdsell could not recall a single workweek where he did not have at least one or two full days off. Birdsell Dep. at 71:19-72:3 Therefore, the most Birdsell could have worked, assuming he worked the remaining operating hours for the Airport Facility (which PMSM denies), is 53 hours. Birdsell does not claim that his pay dropped below the minimum wage during weeks he worked 53 hours. Indeed, like Maier, Birdsell had no clue that his lawsuit included a claim against PMSM for minimum wage violations much less any personal knowledge regarding when his pay allegedly dropped below the minimum wage based on the number of hours he worked. Birdsell Dep. at 130:14-20, 165:7-13

### 3.    Birdsell's Termination and Retaliation Claim

On or about May 17, 2018, PMSM entered negotiations with a third party ("Purchaser") regarding the sale of some of its storage and RV facilities. *See* Mulvaney Dec at ¶ 7. As part of the contemplated sale, PMSM and the Purchaser conducted an audit of PMSM's books and records for its facilities. *Id.* Upon review of the books and records for the Airport Facility, the Purchaser discovered some irregularities that caused PMSM to hire a third party to conduct an audit of its books and records. *Id.* The audit identified a significant number of write offs, more than $7,000.00, for a single customer. *Id.* PMSM coordinated a meeting with Birdsell to discuss the excessive write offs for this particular customer's storage rents. *Id.* During that meeting, Birdsell indicated that it must have been a "mistake." *Id.* However, PMSM told Birdsell it could not have been a "mistake" because each write off required Birdsell to take affirmative steps in PMSM's computer system to make the write offs each month. *Id.* Birdsell could not articulate an answer or otherwise defend the write offs for this customer. *Id.*[12] Therefore, on June 6, 2018, PMSM terminated Birdsell's employment and required that he vacate the employer provided housing within five days in

---

[12] PMSM also had information from U-Haul's corporate headquarters that it was investigating Birdsell's location and U-Haul rental practices because it believed he was stealing U-Haul equipment.

accordance with the terms of his employment agreement. *Id. See also* Exhibit I (Birdsell's Employment Agreement).

Maier filed this lawsuit on March 29, 2018. *See* (Dkt No. 1). PMSM terminated Maier's employment on July 29, 2017. Therefore, she was not a PMSM employee when she filed the lawsuit and, as a result, any claim she makes for retaliation under the FLSA is dead on arrival. Birdsell was not a named Plaintiff when Maier initially filed this lawsuit. *Id.* Birdsell worked for PMSM until June 6, 2018, roughly two and a half months after Maier initiated this lawsuit. However, Birdsell did not join this lawsuit, as a named plaintiff or otherwise, until he filed his consent form on June 29, 2018. *See* Birdsell consent (Dkt. No. 10). Likewise, neither Birdsell nor Maier testified that anyone at PMSM was aware that Birdsell allegedly caused Maier to file this lawsuit. Maier Dep. at 115:20-117:4 and Birdsell Dep. at 198:11-199:9. Therefore, PMSM terminated Birdsell's employment before it was aware of his involvement, if any, in this lawsuit.

Birdsell also had a difficult time articulating the basis for his retaliation claim. Initially, Birdsell testified that he retained certain district manager privileges when PMSM reassigned him to the Airport Facility, which allowed him to help complete write offs in PMSM's system for other property managers. Birdsell Dep. at 146:1-147:7. According to Birdsell, he occasionally received requests from other PMSM storage property managers to write off rent for a particular customer and Stephen Yates (Birdsell's District Manager) would authorize Birdsell to make the change in the system. Birdsell Dep. at 146:1-147:7. Birdsell testified that PMSM's basis for his termination, unilaterally writing off more than $7,000 of rent for one of his customers, is retaliation because he made other write offs authorized by Stephen Yates. Birdsell Dep. at Birdsell Dep. at 147:25-150:21. Birdsell never mentioned that PMSM retaliated against him because it knew he caused Maier to initiate the lawsuit or otherwise. However, following a break with his attorney, Birdsell

immediately recalled that the *real basis* of his retaliation claim is that Maier filed this lawsuit. *See* Birdsell Dep. at 194:21-196:6. However, distinctly missing from Birdsell's testimony is *any* evidence that he personally participated in any protected activity of which PMSM was aware prior to his termination – a fact which is fatal to his retaliation claim. Birdsell Dep. at 150:9-152:7.

## V.      ARGUMENT AND AUTHORITIES

### A.      Standard of Review

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper when the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).

The Court reviews the evidence in the light most favorable to the nonmovant, but the nonmovant must do more than just cast "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Unsubstantiated beliefs and opinions are not competent summary judgment evidence. *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994). Moreover, the Court is not required to adopt Plaintiffs' self-serving statements or version of events when they are "discredited" and "wholly contradicted by the evidence in the record." *See Scott v. Harris*, 550 U.S. 372, 380 (2007); *Carnaby v. City of Houston*, 636 F.3d 183, 187 (5th Cir. 2011) (conclusory allegations and unsubstantiated assertions are not competent summary judgment evidence and court does not have rely on plaintiffs' description of event that are discredited by other evidence). If the nonmovant fails to establish an essential element of her claims against the moving party, summary judgment is warranted. *Celotex Corp. v. Catreet*, 477 U.S. 317, 323 (1986).

**B.      Plaintiffs Bear the Burden of Proof on their FLSA Claims.**

Under the FLSA, employers must pay non-exempt employees at least the prevailing federal minimum wage, as well as overtime pay at a rate of one-and-a-half times their regular rate of pay for all work hours over 40 in a given workweek. 29 U.S.C. § 206(a); 29 U.S.C. § 207(a)(1); *Allen v. McWane, Inc.*, 593 F.3d 449, 453 (5th Cir. 2010) (quotation omitted).

Individuals suing an employer for unpaid hours, including alleged overtime hours, must prove that they performed work for which they were not properly compensated. *See Von Friewalde v. Boeing Aerospace Operations, Inc.*, 339 Fed. App'x. 448, 455 (5th Cir. 2009); *Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005). Individuals suing for unpaid hours must also produce sufficient evidence showing the "amount and extent of that work as a matter of just and reasonable inference." *Von Friewalde*, 339 Fed. App'x. at 455; *Harvill*, 433 F.3d at 441.

**1.      Plaintiffs FLSA claims fail because they cannot establish having performed uncompensated work as a matter of "just and reasonable inference"**

Plaintiffs' overtime claims rely entirely on their own self-serving, and conflicted, allegations of unpaid overtime hours while working as property managers for PMSM. On the one hand, Plaintiffs' Complaint and responses to discovery allege that both Plaintiffs' overtime claims are rooted in the operating hours of the Airport Facility. At the same time, during their depositions, Plaintiffs testified that they worked before and after the normal operating hours each week, which always miraculously equaled 63 hours regardless of how many days off they had during any particular workweek. However, Plaintiffs' payroll certifications for the relevant period clearly tell a different tale. In fact, the payroll certifications contradict each of Plaintiffs' overtime theories entirely.

16

Maier testified that an undisclosed individual at an undisclosed point in time instructed her that the payroll certification forms gave her an opportunity to report when she performed work at a different PMSM facility. Likewise, Birdsell testified that PMSM explained to him in 2013, when it first introduced the payroll certification form to property managers, that it was meant to record work performed at another PMSM location. However, the payroll certification form unambiguously indicates that it is to be used to report whether the employee's hours exceeded the hours agreed to under the parties' employment agreement for a particular workweek.

Maier's claimed ignorance to the plain meaning of the document does not make much sense in light of her pay records for the company. Maier often cleaned a separate facility known as the 1464 Shopping Center. Maier testified that she typically cleaned that facility either before or after her normal working hours at the Airport Facility. However, she never informed anyone at PMSM that she was performing that work outside of her normal 45 hour working schedule. Further, Maier testified that PMSM did not schedule or require her to clean to 1464 Shopping Center prior to the normal operating hours of the Airport Facility. Maier's allegation also conveniently brushes over the fact that the real reason for writing 1464 Shopping Center on her payroll certification forms is to allow PMSM to pay her the agreed monthly bonus associated with cleaning the 1464 Shopping Center during each workweek. Specifically, Maier's payroll records clearly indicate that she received an additional $425 per month in her monthly bonus for months she helped clean the 1464 Shopping Center. Maier never complained that cleaning the 1464 Shopping Center caused her to work additional hours outside of her normal employment agreement.

Birdsell's claims regarding the payroll certifications are equally confusing. On the one hand, Birdsell claims that when PMSM started using the payroll certification forms in 2013 it instructed him to annotate when he worked additional hours at a separate PMSM facility. On the

17

other hand, Birdsell claims that he used the payroll certification forms to let PMSM know how many hours he was away from the Airport Facility. In actuality, Birdsell reported specific hours on at least one occasion that exceeded his employment agreement for which PMSM compensated him. Birdsell also reported days during particular workweeks that he helped PMSM cut locks and perform auctions at its storage facilities, which resulted in additional bonus payments each month. However, Birdsell testified that no one at PMSM required him to cut locks or perform auctions outside of the normal business hours for the Airport Facility.

Plaintiffs' overtime theory based on the operating hours of the Airport Facility is equally unavailing. Plaintiffs' overtime claims in the Complaint and responses to discovery are clearly based on the 63 hours the Airport Facility was open for business on a weekly basis. However, Maier and Birdsell testified that they each had at least one day off a week (meaning the max they could have worked was 53 hours assuming they worked all remaining hours the Airport Facility was open for business) or two days off, meaning they only worked 43 hours despite the fact that PMSM paid them for the full 45 hours contemplated in the employment agreements. For Plaintiffs' tale to be actionable, this means they would have to show that during weeks they only had one day off, they always performed at least 10 hours of unreported overtime or, on weeks they had two days off, they always performed 20 hours of unreported overtime. Neither Birdsell nor Maier provided any testimony or evidence substantiating any such overtime hours by "just and reasonable inference" or at all for that matter. Plaintiffs' overtime theory is a bridge too far.

With this record, Plaintiffs not only lack evidence of actual uncompensated work, they clearly have no evidence of the amount and extent of any such work "as a matter of just and reasonable inference." *See Von Friewalde*, 339 Fed. Appx at 455, 458-59 (group of employees failed to carry their burden of proving unpaid hours because evidence only showed that "on random

18

occasions occurring perhaps a handful of times over the course of a year or more, they allegedly worked overtime . . ." and confirming that one employee satisfied burden because he had documents tracking when he performed overtime work without pay); *Harvill*, 433 F.3d at 441 (affirming summary judgment for employer because employee offered "no factual allegations at all to substantiate her claim, and she presented no evidence of the amount or the extent of hours she worked without compensation" and "absolutely no evidence she actually worked the hours she allege[d]"); *Garner v. Chevron Phillips Chemical Company*, 834 F.Supp.2d 528, 559-60 (S.D. Tex. 2011) (granting summary judgment for employer because employee could not, among other things, identify any dates on which she worked overtime). Indeed, the only just and reasonable inference to make from the record in this case, including Plaintiffs' self-reported records and their deposition admissions, is that Plaintiffs were properly paid for all their reported time, which are all the hours they worked at PMSM.

### 2.     Maier and Birdsell Never Reported Unpaid Overtime Hours to PMSM

Plaintiffs' failure to notify PMSM that they allegedly suffered unpaid overtime hours is fatal to their claims against PMSM. Maier worked for PMSM for nearly six years, albeit over an eight-year span. From 2010 to 2013, PMSM employed Maier as a property manager at one of its storage facilities. PMSM terminated Maier when her storage facility closed in December 2013. PMSM re-hired Maier as a property manager in April 2015, to work with Birdsell, when it opened its Airport Facility. From April 2015 to July 2017, Maier worked the same schedule for PMSM under the same general terms found in her employment agreement. Indeed, Maier filled out payroll certifications, or authorized Birdsell to fill them out and sign them on her behalf, and never reported any additional hours. Indeed, Maier's payroll certifications show, unequivocally, that she never reported any unpaid overtime hours to PMSM.

19

Likewise, Birdsell worked for PMSM as a property manager from DATE through December 2013 and again from April 2015 through June 2018. During that time, Birdsell occasionally reported additional overtime hours for which PMSM compensated him. Aside from the limited times Birdsell actually reported any additional hours, hours which PMSM properly compensated him, he never informed PMSM of any alleged unpaid overtime hours he suffered during his employment. Like Maier, with limited exception, Birdsell's payroll certifications are devoid of any indication that he was working more than the hours contemplated in his employment agreement.

Under these facts, the Fifth Circuit and other courts throughout the United States have held that when an employee fails to report all of her hours the employer cannot be imputed with knowledge of the alleged off-the-clock-hours and, therefore, does not violate the FLSA. *See e.g. Fairchild v. All American Check Cashing, Inc.*, 815 F.3d 959, 964-65 (5th Cir. 2016)(finding that employee cannot recover for unpaid overtime under the FLSA if the employee disregards the employer's requirements for reporting the overtime to provide the employer with appropriate notice) *see also Newton v. City of Henderson*, 47 F.3d 746 (5th Cir. 1995) (reversing verdict and rendering judgment in favor of employer on basis that city required officer to submit accurate timesheets, he submitted false timesheets, city had no duty to investigate whether officer was complying with policy, and city could rely on fact that he should have adhered to policy); *Brumbelow v. Quality Mills, Inc.*, 462 F.2d 1324 (5th Cir. 1972) (affirming directed verdict on basis that where an employer requires an employee to record his hours and where the employer does not know or have reason to know that employee's reporting is not accurate, employee cannot now claim that she worked more hours than she recorded in her timesheets and the employer is not liable for hours not recorded); *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th

Cir. 1981) (affirming summary judgment in favor of employer because plaintiff "deliberately omitted the inclusion of those hours from his time sheet even though he admittedly knew that he would have been paid for those hours"); *Valentine v. Harris County*, 2005 WL 8167315 *4 (S.D. Tex. 2005) (granting summary judgment because plaintiffs admitted submitting false timesheets, employer did not know timesheets were false, and plaintiffs "collaborated" with their supervisor, the police chief, in turning in false timesheets); *Mortenson v. Western Light & Telephone Co.*, 42 F. Supp. 319, 321-22 (S.D. Iowa 1941) (finding that no court has held, nor will any court ever hold, that an employee who "began to keep a secret report of . . . the time [he worked] . . . [that] was kept by him privately and was never revealed to his employer until after his [employment] relations with the defendant company" ended can "take advantage [of the FLSA]. . . and claim that the false reports" he made and resulting non-payment can be corrected by the FLSA).

Maier's and Birdsell's agreed that if the 45-hours per week contemplated in their individual employment agreement were not accurate they would immediately notify PMSM of the change in circumstances. Additionally, Maier and Birdsell submitted weekly payroll certifications that clearly indicated they were to report additional hours, if necessary, or certify that the hours worked during a particular workweek did not exceed the hours agreed to under the terms of their employment. Maier and Birdsell each testified that, despite the unambiguous language in the payroll certifications to the contrary, they thought the forms were only for reporting when they worked at a different facility. This argument frankly does not make any sense. For one, Maier does not have any personal knowledge of such an instruction from anyone at PMSM. Additionally, Maier often reported cleaning the 1464 Shopping Center but distinctly failed to report any additional hours. Instead, Maier testified that she reported workweeks she helped clean the 1464 Shopping Center to make sure she received the $425 monthly bonus from PMSM. Similarly,

Birdsell alleges that in 2013, NAME instructed him to annotate when he worked at a separate facility on his payroll certifications. However, Birdsell admitted that he reported specific hours on his payroll certifications on at least one occasion. When presented with his payroll certifications, Birdsell reached deeper into his bag of stories and testified that he wrote specific hours to inform his employer how long he was away from the Airport Facility. Birdsell's testimony lacks credibility because, among other things, PMSM sent him a follow up email to his payroll certification reporting additional hours and indicated that it would make sure payment for the additional hours were reflected in his next paycheck.

This case is similar to *Fairchild* in that there was an understanding regarding the employee's obligation to report additional overtime hours, there was a system in place in which the employee was afforded the opportunity to report overtime, and the employee disregarding her obligations and did not give the employer notice of the overtime hours allegedly worked. *Fairchild*, 815 F.3d at 964-65. Under these facts, PMSM cannot be liable to Maier and Birdsell under the FLSA because it did not have any knowledge that Maier or Birdsell were allegedly working any uncompensated overtime hours. *Carman v. Meritage Homes Corp.*, 2014 WL 4923759, at *2 (S.D. Tex. Sept. 30, 2014)("Where an employer has no reason to know that an employee is working overtime, or has been deliberately prevented from knowing about the practice, no overtime violation has occurred.").

### 3.   Plaintiffs were not even aware their claims included alleged minimum wage violations.

As stated, it is unclear whether the allegations regarding minimum wage violations apply to both Maier and Birdsell, or just Maier. Regardless, neither can establish a viable claim for minimum wage violations based on the facts in this case. In fact, completely missing from Plaintiffs' testimony, are any facts that would allow the Court to determine that PMSM denied

Maier or Birdsell the minimum wage during any period of their employment as property managers with PMSM.

Maier's only basis that she was not paid the minimum wage is that she allegedly worked 63 hours a week (which is demonstrably not true based on Maier's own testimony) and dividing her weekly wage of $320.29 by 63 places her straight time rate below the $7.25 minimum wage. Plaintiffs maintain the burden, similar to their overtime claims, to provide evidence of the number of hours worked which caused their pay to drop below the federal minimum wage. *Beliz v. W.H. McLeod & Sons Packing Co.*, 765 F.2d 1317, 1330 (5th Cir. 1985)(Employees "meet their burden if they produce 'sufficient evidence to show the amount and extent of [their] work as a matter of just and reasonable inference.'").

Maier bases her entire minimum wage claim on her own self-serving testimony that she worked at least 63 hours a week, which caused her weekly pay to fall below the minimum standards. As stated, Maier's testimony regarding the hours she worked is not credible. On the one hand, the Airport Facility was only open 63 hours per week. However, Maier testified that she regularly had one day off per week and sometimes she had two days off per week. During those weeks, Maier's maximum hours based on the Airport Facilities operating hours would be 53 or 43, respectively. Faced with these basic calculations disproving her claimed overtime and minimum wage theory, Maier testified that she simply worked unpaid overtime hours before and after the normal operating hours of the Airport Facility. However, for this to be true, Maier would have always had to record ten overtime hours during workweeks she had one day off and 20 overtime hours during workweek she received two days off. Maier did not have any knowledge regarding what tasks she performed for 10 extra hours some weeks and 20 extra hours in others.

This case is not like *Beliz*. In *Beliz*, the employer failed to keep any records of the amount of time its employees performed work. 765 F.2d at 1330-31. Therefore, the employees were allowed to rely on "admittedly inexact and approximate evidence" to establish their minimum wage claims. *Id.* Here, PMSM had a system in place for reporting and recording each individual employee's work hours. The payroll records completely disprove Maier's testimony that she always worked 63 hours. Accordingly, unlike the plaintiffs in *Beliz*, Maier (and Birdsell for that matter), must present more than inexact and approximate evidence to meet their prima facie burden regarding Maier's minimum wage claims.

In addition, Maier's minimum wage claim conveniently ignores the fact that she received monthly commissions and non-discretionary bonuses which are to be included when calculating her straight time rate. Unsurprisingly, Maier's straight time rate is always well above the federal minimum wage when properly allocating her monthly commissions and bonus to the individual workweeks. Maier also conveniently fails to mention that PMSM calculated overtime on her commissions and bonus according to the DOL's overtime coefficient chart. Therefore, assuming Maier's testimony regarding the number of hours she worked is credible (and it is not), Maier's theory regarding PMSM's alleged minimum wage violation is flawed and fails to meet her prima facie burden. In other words, Maier cannot point to a single piece of evidence in the record – aside from her self-serving assertions – that substantiate her claim that PMSM failed to pay her the minimum wage during a particular workweek.

### C.    Birdsell Cannot Rely on Maier's Conduct to Establish his Retaliation Claim

FLSA retaliation claims pursuant to FLSA § 215(a)(3) are evaluated under the *McDonnell Douglas* burden shifting analysis. *Casey v. Livingston Parish Commc'ns. Dist.*, 2009 WL 577756 at *5 (5th Cir. 2009). To establish a prima facie case, a plaintiff must show: (1) he is engaged in a protected activity; (2) an adverse employment action occurred; and (3) a causal link existed

between the protected activity and the adverse action. *Id.* Where a plaintiff can establish a prima facie case, "the burden shifts to the defendant to prove a legitimate, non-discriminatory purpose for the adverse employment action." *Id.* "If the defendant meets this burden, it shifts back to the plaintiff, who must prove that the employer's stated reason for the adverse employment action was merely pretextual." *Id.* As explained in detail below, Birdsell cannot establish a prima facie case because he did not engage in any protected activity and, in the unlikely event he did, there is not a causal link between the alleged protected conduct and the adverse action. Additionally, even if Birdsell can establish a prima facie case, Birdsell's retaliation claim fails because PMSM articulated a legitimate non-retaliatory reason for his termination.

Birdsell testified that he believes the company retaliated against him because Maier filed this lawsuit against PMSM in March 2018. Birdsell's Complaint alleges that he is in the "zone of interest" which the anti-retaliation provision of the FLSA is designed to protect.

Birdsell undoubtedly references the zone of interest test for determining who may bring a claim under Title VII announce in *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 178, 131 S.Ct. 863, 178 L.Ed.2d 694 (2011). However, Birdsell's argument ignores the clear distinction the Fifth Circuit identified in zone of interest cases under Title VII and other statutes such as the FLSA. *See e.g. Pineda v. JTCH Apartments, L.L.C.*, 843 F.3d 1062, 1066-67 (5th Cir. 2016). In *Pineda*, the Fifth Circuit stated that the zone of interest test applied to Title VII cases is inapplicable to FLSA cases because of the differences in the statutory text. *Id.* Specifically, the Fifth Circuit found that the FLSA's anti-retaliation provision only prohibits discriminating against or discharging an employee while Title VII any person claiming to be aggrieved to file suit. *Id.*

*Pineda* evaluated whether the non-employee spouse of an employee could maintain an FLSA retaliation claim against her spouse's employer based on the zone of interest test, so it is not

directly on point. *Id.* However, the Fifth Circuit's evaluation is instructive when compared to similar evaluations of retaliation claims under other statutes. *See e.g. Holt v. JTM Indus., Inc.*, 89 F.3d 1224, 1226–27 (5th Cir. 1996)(Finding that an employee's spouse's protected activities do not confer automatic standing on the employee to bring a claim for retaliation unless the employee "oppose[es] discriminatory practices or participate[s] 'in any manner in an investigation [or] proceeding' under the ADEA"). Uniquely missing from Birdsell's claims and testimony related to his retaliation claim is any evidence that he opposed any discriminatory practices or otherwise participated in protected activity under the FLSA that would give him standing to bring a claim for retaliation. The FLSA is clear in this regard, it is only unlawful "to discharge or ... discriminate against [an] *employee* because such *employee* has filed any complaint." 29 U.S.C. § 215(a)(3)(emphasis added). Birdsell did not join this lawsuit or otherwise take any part in Maier's claims until after PMSM terminated his employment. Therefore, Birdsell's retaliation claim fails as a matter of law because he did not engage in any protected activity under the statue.

Moreover, even assuming Birdsell did engage in protected activity (which he did not), his retaliation claim is still dead in the water. That is, PMSM has a legitimate and non-retaliatory reason for terminating Birdsell's employment. Specifically, Birdsell unilaterally wrote off more than $7,000 worth of rent for a single customer without PMSM's authorization. Birdsell claims he was authorized to help with write offs for other property managers upon approval by the district manager. However, the district manager never approved Birdsell's write offs for this particular customer and, therefore, he was acting outside the scope of his alleged authority. Birdsell testified that it was a mistake for him to write off rents for this customer without first seeking approval from PMSM. Birdsell Dep. at 162:9-163:12.

**D.      Plaintiffs cannot prove that PMSM willfully violated the FLSA.**

FLSA claims have a two-year statute of limitations unless the alleged violation was willful, in which case a plaintiff would be entitled to three years of unpaid hours. 29 U.S.C. § 255(a). A violation is "willful" if the employer "knew or showed reckless disregard for . . . whether its conduct was prohibited by statute." *Stokes v. BWXT Pantex, L.L.C.*, 424 Fed. App'x 324, 326 (5th Cir. 2011). Plaintiffs bear the burden of proving that PMSM willfully violated the FLSA. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988); *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 356 (5th Cir. 1990).

To ensure Plaintiffs were properly compensated, PMSM had certain policies and agreements in place, which required payment for all hours worked, including overtime at time and-a-half for hours over 40 in a workweek. Plaintiffs admitted that they were aware of these policies and agreements, and that by submitting their time records they were certifying the accuracy of their reported hours. Moreover, Plaintiffs admitted that PMSM paid them for all the hours reported in their time records. Plaintiffs have no credible summary judgment evidence supporting their claim that PMSM willfully violated the FLSA. *Cabral v. Life Ambulance Serv., Inc.*, 2007 WL 4365767, at *15-16 (W.D. Tex., November 15, 2007). Accordingly, there is no basis to extend the statute of limitations in this case to three years.

**VI.      CONCLUSION AND RELIEF SOUGHT**

For the foregoing reasons, Private Mini Storage Manager, Inc. respectfully requests that the Court grant its Motion for Summary Judgment and dismiss Plaintiff's claims in their entirety, with prejudice, and grant Private Mini Storage Manager, Inc. such other and further relief, at law and in equity, to which it is justly entitled.

Respectfully submitted,

**EVERSHEDS SUTHERLAND (US) LLP**

By: *_/s/ Marlene C. Williams_*
      Marlene C. Williams
      Attorney-in-Charge
      Texas State Bar No.:  24001872
      Federal ID No.:  22824
      1001 Fannin, Suite 3700
      Houston, Texas 77002
      (713) 470-6100
      (713) 654-1301 – Facsimile
      marlenewilliams@eversheds-sutherland.com

**OF COUNSEL:**
John T. Hays
Texas Bar No.:  24101885
Federal ID No.:  3015861
1001 Fannin, Suite 3700
Houston, Texas 77002
(713) 470-6100
(713) 654-1301 – Facsimile
johnhays@eversheds-sutherland.com

**ATTORNEYS FOR DEFENDANT**
**PRIVATE MINI STORAGE MANAGER, INC.**

## <u>CERTIFICATE OF SERVICE</u>

      This is to certify that on this 2nd day of July, 2019, a true and correct copy of the foregoing was served electronically through the Court's ECF System to all parties of record.

/s/ *Marlene C. Williams*
Marlene C. Williams
