IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LORETTA MAIER, *et al.*, | § | |
|     Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-18-0991 |
| | § | |
| PRIVATE MINI STORAGE | § | |
| MANAGER, INC., | § | |
|     Defendant. | § | |

## MEMORANDUM AND ORDER

This Fair Labor Standards Act ("FLSA") case is before the Court on the Motion for Summary Judgment ("Motion") [Doc. # 34] filed by Defendant Private Mini Storage Manager, Inc. ("PMSM"), to which Plaintiffs Loretta Maier and Scott Birdsell filed a Response [Doc. # 35], and Defendant filed a Reply [Doc. # 36]. Having reviewed the full record and the applicable legal authorities, the Court **denies** the Motion as to Maier's FLSA overtime compensation claim, and **grants** the Motion in all other respects.

## I. BACKGROUND

PMSM offers self-storage facilities and RV Parks in the Houston area. PMSM operated several self-storage facilities during the period of time Plaintiffs were employed. Currently, however, PMSM operates only one storage facility in Houston. *See* Declaration of Douglas Mulvaney, Exh. A to Motion, ¶ 3.

Plaintiff Maier worked for PMSM as a Property Manager from 2008 through 2013, then again from April 2015 until July 2017. Her husband, Plaintiff Birdsell, also worked for PMSM as a Property Manager from 2008 through 2013, as a district manager of RV parks from 2014 until April 2015, and again as a Property Manager at the same facility as Maier from April 2015 until June 6, 2018. Property Managers perform a variety of tasks to manage the storage facility, including renting the storage units, renting U-Haul trucks, and maintaining the property and equipment at the facility.

In connection with their employment as Property Managers in April 2015, Plaintiffs each executed an Employment Agreement. *See* Maier Employment Agreement, Exh. D to Motion; Birdsell Employment Agreement, Exh. I to Motion. In the Employment Agreement, each Plaintiff stated that "PMSM and Employee have evaluated all of the pertinent facts surrounding Employee's work circumstances" and that they "decided that 45 hours per week is a reasonable estimate of hours Employee will work each week. . .." *See id.*, ¶ 3. Each Plaintiff also agreed that if circumstances changed such that 45 hours no longer represented a fair estimate of the number of hours worked each week, "Employee agrees to immediately notify PMSM in writing of such changed conditions so that a new employment agreement, reflecting fair and reasonable estimates of the number of hours Employee works per week may be

negotiated." *Id.* It is undisputed that each Plaintiff was paid a weekly wage that included overtime pay for the 5 overtime hours per week. Maier also received a $425.00 monthly bonus for helping to clean at a facility located on FM 1464.

PMSM provided each Plaintiff with a weekly payroll certification form ("Payroll Form"). An early version of the Payroll Form, used from April 2015 until mid-April 2016, stated: "Under the terms of our Employment Agreement, the undersigned will report any unusual change in the hours worked for the week ending" followed by a blank for the applicable date. *See, e.g.*, Employment Form, Exh. F to Motion, ECF pp. 2-50. There was also a representation that "the hours worked for this period did not exceed the hours agreed to under the terms of my employment." *Id.* Beginning with the week ending April 16, 2016, the Payroll Form changed. The representation regarding hours worked not exceeding the hours agreed to under the Employment Agreement was changed to read: "Please be advised that the hours worked for this period (did not/did) exceed the hours agreed to under the terms of my Employment Agreement." *See* Payroll Form, ECF pp. 51-110. The employee was to circle either "did not" or "did" as applicable. If the employee chose "did," there was a section on the Payroll Form for the employee to explain the excess hours. *See id.*

Each Plaintiff took at least one full day off each week, and each took vacation time.

Maier stopped working for PMSM in July 2017, leaving Birdsell as the only Property Manager at the facility.

In May 2018, PMSM began negotiating with a third party regarding the sale of some of PMSM's storage and RV Park facilities. *See* Mulvaney Decl., ¶ 7. When the prospective purchaser reported some irregularities, PMSM hired a third party to audit PMSM's books and records. *See id.* The auditors reported more than $7,000.00 in rental write offs for a single customer at the PMSM facility where Birdsell was the Property Manager. *See id.* When Birdsell failed to explain the write-offs to PMSM's satisfaction, his employment was terminated on June 6, 2018. *See id.*

Maier filed this lawsuit on March 29, 2018. In the Complaint [Doc. # 1], she asserted FLSA claims for failure to pay overtime wages and for failure to pay minimum wage. On July 3, 2018, Maier and Birdsell filed an amended Complaint [Doc. # 14], again asserting FLSA claims for failure to pay overtime wages and failure to pay minimum wage. In the new Complaint, Birdsell asserted an FLSA claim for retaliation. On November 30, 2018, Plaintiffs filed their Second Amended Complaint [Doc. # 25], again asserting the same FLSA claims. Following the close of discovery, Defendant filed its Motion for Summary Judgment, which has been fully briefed. In their Response, Plaintiffs admitted that Defendant paid them minimum wage. *See*

Response, p. 4 n.1.  As a result, Defendant is entitled to summary judgment on the minimum wage claim.  The Motion is now ripe for decision.

## II.  <u>SUMMARY JUDGMENT STANDARD</u>

Rule 56 of the Federal Rules of Civil Procedure provides for the entry of summary judgment against a plaintiff who fails to make a sufficient showing of the existence of an element essential to his case and on which he will bear the burden at trial.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*).  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *Celotex*, 477 U.S. at 322-23; *Curtis*, 710 F.3d at 594.

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact."  *ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc.*, 699 F.3d 832, 839 (5th Cir. 2012).  The moving party, however, "need not negate the elements of the nonmovant's case."  *Coastal Agric. Supply, Inc. v. JP Morgan Chase Bank, N.A.*, 759 F.3d 498, 505 (5th Cir. 2014) (quoting *Boudreaux v. Swift Transp.*

*Co.*, 402 F.3d 536, 540 (5th Cir. 2005)). The moving party may meet its burden by pointing out "the absence of evidence supporting the nonmoving party's case." *Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citing *Celotex*, 477 U.S. at 323; *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *See Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 141 (5th Cir. 2004); *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action." *Spring Street Partners-IV, L.P. v. Lam*, 730 F.3d 427, 435 (5th Cir. 2013). "A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-movant. *Tamez v. Manthey*, 589 F.3d 764, 769 (5th Cir. 2009) (citing *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial.'" *Pioneer Exploration, L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (quoting *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002); *accord Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence. *See Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-13). The Court is not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of evidence. *Id.* (citing *Reaves Brokerage*, 336 F.3d at 413); *accord, Little*, 37 F.3d at 1075. Affidavits cannot preclude summary judgment unless they contain competent and

otherwise admissible evidence. *See* FED. R. CIV. P. 56(c)(4); *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 776 (5th Cir. 2000).

## III.  <u>OVERTIME CLAIM</u>

### A.  <u>29 C.F.R. § 785.23</u>

The FLSA generally requires an employer to compensate an employee who works more than 40 hours in a work week at a rate not less than one and one-half times his regular rate for all hours over 40. *See* 29 U.S.C. § 207(a)(1); *Harvill v. Westward Commc'ns, L.L.C.*, 433 F.3d 428, 441 (5th Cir. 2005). An employee who asserts an FLSA claim for unpaid overtime compensation must first demonstrate that he has performed work for which he alleges he was not compensated at the proper rate. *See id.* Under circumstances where the employee resides on the employer's premises, it is often difficult to determine the exact hours the employee spent working. Under these circumstances, a Department of Labor regulation interpreting the FLSA allows an agreement between the parties regarding the number of hours worked by the employee. *See* 29 C.F.R. § 785.23. The regulation states:

> An employee who resides on his employer's premises on a permanent basis or for extended periods of time is not considered as working all the time he is on the premises. Ordinarily, he may engage in normal private pursuits and thus have enough time for eating, sleeping, entertaining, and other periods of complete freedom from all duties when he may leave the premises for purposes of his own. It is, of course, difficult to determine the exact hours worked under these circumstances and any reasonable

> agreement of the parties which takes into consideration all of the
> pertinent facts will be accepted.

29 C.F.R. § 785.23; *Brock v. El Paso Nat. Gas Co.*, 826 F.2d 369, 374 n.8 (5th Cir.

1987). The regulation "allows employers and employees to reach a 'reasonable

agreement' regarding the number of hours presumptively worked when an employee

resides on the employer's premises." *Balbed v. Eden Park Guest House, LLC*, 881

F.3d 285, 290 (4th Cir. 2018). An agreement reached pursuant to this regulation "is

binding if it is reasonable in light of 'all of the pertinent facts' of the employment

relationship." *Id.* at 292 (citing *Garofolo v. Donald B. Heslep Assocs.*, 405 F.3d 194,

199 (4th Cir. 2005); *Leever v. Carson City*, 360 F.3d 1014, 1018 (9th Cir. 2004);

*Brock v. City of Cincinnati*, 236 F.3d 793, 806 (6th Cir. 2001)). A court must

determine whether the parties' agreement "falls within a *broad zone of*

*reasonableness*, considering its terms and all of the facts and circumstances of the

parties' relationship." *Brock,* 236 F.3d at 806 (emphasis added).

In this case, PMSM has presented evidence that it entered into an Employment

Agreement with each Plaintiff. In the Employment Agreements, Plaintiffs agreed that

they would have time to "engage in normal private pursuits" and would have "periods

of complete freedom from all duties during much of the time that the mini-warehouse

office is open." *See* Employment Agreements, Exhs. D and I, ¶ 3. As an example of

the freedom to engage in personal pursuits, Birdsell played a Farm Heroes Saga game

on Facebook when he was in the office during the work day. *See* Birdsell Depo., pp. 112-15. Therefore, because of the difficulty in determining the exact number of hours actually worked, the parties agreed that "PMSM and Employee have evaluated all of the pertinent facts surrounding Employee's work circumstances, and have decided that **45** hours per week is a reasonable estimate of hours Employee will work each week, considering both normal and abnormal or emergency situations." *See* Employment Agreements, ¶ 3 (bolding in original). The parties further agreed that:

> If circumstances change so that this agreement no longer reflects a fair estimate of the number of hours that Employee works, Employee agrees to immediately notify PMSM in writing of such changed conditions so that a new employment agreement, reflecting a fair and reasonable estimate of the number of hours Employee works per week may be negotiated.

*Id*.

In addition to the representation in the Employment Agreements that PMSM and each Plaintiff evaluated the relevant facts and circumstances and decided that 45 hours per week was a reasonable estimate, PMSM has presented evidence that it "hired a third party consultant to conduct a work study of Property Managers' weekly work routines across its facilities to recommend a reasonable estimate of the number of hours spent working throughout an average workweek." *See* Mulvaney Decl., ¶ 6. PMSM has presented competent summary judgment evidence of a reasonable

agreement between it and each Plaintiff which takes into consideration all of the pertinent facts.

Plaintiffs argue that the agreement is not reasonable because they actually worked more than 45 hours per week. This argument is contrary to the clear purpose of § 785.23, which eliminates the need to calculate the number of hours actually worked when doing so is likely to be especially difficult. *See Barraza v. Pardo*, 2016 WL 4435617, *2 (11th Cir. Mar. 10, 2016). Plaintiffs have presented no evidence that "a reasonable employer would necessarily have known that [45 hours per week] was too short a time to perform the tasks" required of co-Property Managers at PMSM. *See Rudolph v. Metro. Airports Comm'n*, 103 F.3d 677, 684 (8th Cir. 1996).

The uncontroverted evidence establishes that PMSM entered into a reasonable agreement with each Plaintiff establishing 45 as the number of hours each Plaintiff would reasonably work per week. Therefore, pursuant to 29 C.F.R. § 785.23, the agreement is binding unless and until either Plaintiff notified PMSM in writing that the agreement no longer reflected a fair estimate of the number of hours he or she was working each week, so that a new employment agreement could be negotiated.

## B. __Birdsell__

It is undisputed that Birdsell did not advise PMSM in writing that the Employment Agreement no longer reflected a fair estimate of the number of hours he

worked each week. Indeed, Birdsell repeatedly signed Payroll Forms in which he either signed immediately beneath a printed statement that "the hours worked for [the pay period] did not exceed the hours agreed to under the terms of my Employment Agreement" or selected "did not" to state that the hours worked for the pay period did not exceed the hours agreed to under the terms of the Employment Agreement.[1] *See, e.g.*, Payroll Form, Exh. 7 to Response; Payroll Form, Exh. 10 to Response. Birdsell testified in his deposition that he was told "only to add [to the Payroll Form] if we worked at a different property or went and did something else other than or [*sic*] normal routine during the work week." Birdsell Depo., p. 90. Birdsell did not testify, however, and there is no evidence in the record, that he was told not to notify PMSM in writing, as required by the Employment Agreement, if circumstances changed such that the 45-hour provision no longer reflected a fair estimate of the number of hours he was working. It is undisputed that he did not so advise PMSM in writing.

Birdsell argues that it was clear that 45 hours per week was not a reasonable estimate after July 2017 when Maier no longer worked for PMSM and he was the only

---

[1] For the week ending April 28, 2018, Birdsell stated that he "cut locks on day off" and that "did" exceed the hours agreed to under the terms of his Employment Agreement, although he did not state how many hours he spent cutting the locks. *See* Payroll Form, Exh. K to Motion, PMSM000810. For the week ending May 19, 2018, Birdsell stated that he relieved a sick Property Manager for 3.5 hours, and that this "did" exceed the hours agreed to under the terms of his Employment Agreement. *See* Payroll Form, Exh. K to Motion, PMSM000817. It is undisputed that PMSM paid Birdsell for the extra 3.5 hours.

Property Manager at the site.  Yet throughout 2018, with the two exceptions noted above in footnote 2, Birdsell consistently represented that the hours he worked each pay period did not exceed the hours agreed to under the terms of the Employment Agreement.  *See* Payroll Forms, Exh. K to Motion.  PMSM was entitled to rely on Birdsell "to follow the clear terms of [his] employment agreement."  *See Garafolo*, 405 F.3d at 201 (quoting *Rudolph*, 103 F.3d at 684).

Birdsell entered into a reasonable Employment Agreement pursuant to 29 U.S.C. § 785.23 establishing 45 hours per week as a binding estimate of the hours Birdsell worked.  It is undisputed that he did not advise PMSM in writing that his agreement with PMSM was no longer a reasonable estimate so the parties could negotiate a new agreement.  It is undisputed that PMSM paid Birdsell for 45 hours per week, including overtime wages, for each week during the relevant time he worked for PMSM as the Property Manager.  Indeed, it is undisputed that PMSM paid Birdsell 45 hours per week even when he was on vacation.  Birdsell has failed to present evidence that raises a genuine issue of material fact regarding his claim that he is entitled to additional overtime compensation.  As a result, PMSM is entitled to summary judgment on Birdsell's FLSA overtime compensation claim.

## C.   **Maier**

Unlike Birdsell, Maier consistently signed Payroll Forms beginning in April 2016 on which she circled "did" in the section regarding whether the hours worked that pay period exceeded the hours agreed to under the terms of the Employment Agreement. *See, e.g.*, Payroll Form, Exh. 10 to Response.  In the space provided for her to explain the "did" response, Maier wrote that she cleaned "1464 shopping center" on certain days. *See id.*  It is undisputed that PMSM paid Maier $425.00 each month to "Clean FM 1464." *See, e.g.*, Monthly Bonus Report, Exh. 6 to Response.  Therefore, it is unclear whether Maier's reports that she cleaned the "1464 shopping center" were written notice to PMSM that the 45-hour estimate for the storage facility duties no longer reflected a fair estimate of the number of hours she was working, or whether the reports were verification that she completed the task for which she was paid $425.00 per month.  This fact dispute precludes summary judgment on Maier's FLSA overtime compensation claim.[2]

"Under the FLSA, a violation is 'willfull' if the employer either 'knew or showed reckless disregard for [] whether its conduct was prohibited by the statute.'"

---

[2]    Because it appears that the extra hours were for cleaning the property for which she was paid an additional $425.00 per month, it is likely that any overtime compensation to which Maier might be entitled would be reduced by the $425.00 per month she received for the separate cleaning work.

*Singer v. City of Waco, Tex.,* 324 F. 3d 813, 821 (5th Cir. 2003) (quoting *McLaughlin*

*v. Richland Shoe Co.,* 486 U.S. 128, 133 (1988)). "The burden of showing that an

FLSA violation was 'willfull' falls on the plaintiffs." *Id.* The evidence in the record,

viewed in the light most favorable to Maier, fails to raise a genuine issue of material

fact regarding whether any alleged FLSA violation by PMSM was willful. The

Employment Agreement is reasonable under 29 U.S.C. § 785.23, and there is a

genuine issue of material fact regarding whether Maier notified PMSM in writing that

circumstances had changed such that 45 was no longer a fair estimate of the total

number of hours she worked each week. There is no evidence that PMSM knew or

was reckless regarding whether its conduct violated Maier's rights under the FLSA.

PMSM is entitled to summary judgment on the issue of willfulness and, as a result,

the statute of limitations for Maier's FLSA overtime compensation claim is two years.

*See* 29 U.S.C. § 255(a); *Halferty v. Pulse Drug Co.*, 821 F.2d 261, 271 (5th Cir.),

modified on reh'g, 826 F.2d 2 (5th Cir. 1987) (absent willful violation, a plaintiff can

recover damages for the two-year period prior to filing suit).

## IV.    **RETALIATION CLAIM**

### A.    **Analytical Framework**

It is unlawful for an employer "to discharge or in any other manner discriminate

against any employee because such employee has filed any complaint or instituted or

caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding." 29 U.S.C. § 215(a)(3). FLSA retaliation claims are governed by the evidentiary framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Starnes v. Wallace*, 849 F.3d 627, 631 (5th Cir. 2017). First, the plaintiff must establish a *prima facie* case of retaliation by showing that (1) he participated in protected activity under the FLSA; (2) he suffered an adverse employment action; and (3) there exists a causal link between the activity and the adverse action. *See id*. at 631-32. If the plaintiff successfully establishes a *prima facie* case, the burden then shifts to the employer "to articulate a legitimate, nonretaliatory reason for the adverse action." *Id*. Once it has done so, then the burden shifts back to the plaintiff to present evidence that the employer's proffered reason is a pretext for retaliation. *See id.* The ultimate burden is on the plaintiff to prove that the adverse employment action would not have occurred "but for" his protected activity. *See Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 580 (5th Cir. 2004); *Espinoza v. San Benito Consol. Indep. Sch. Dist.*, 753 F. App'x 216, 222 (5th Cir. 2018), *cert. denied*, 2019 WL 1572265 (U.S. June 10, 2019).

### B. *Prima Facie* Case

In this case, Birdsell relies on his wife's protected activity in filing this lawsuit on March 29, 2018. The Supreme Court has held that Title VII supports retaliation

claims based on the "protected activity" of a close family member. *See Thompson v. North Am. Stainless, LP*, 562 U.S. 170, 173-75 (2011). The FLSA's anti-retaliation provision, however, prohibits the discharge of "any employee because *such employee has filed*" a complaint. *See* 29 U.S.C. § 215(a)(3). Therefore, it is unclear whether the holding in *Thompson* applies to retaliation claims under the FLSA. Indeed, neither party has cited a case in which a federal court held that *Thompson* applies to permit an FLSA retaliation claim based on the protected activity of a third-party, and this Court's research has revealed none. The Court assumes, without holding, that Maier's protected activity can satisfy the "protected activity" element for Birdsell's *prima facie* case of FLSA retaliation.

It is undisputed that Birdsell suffered an adverse employment action when he was terminated in June 2018.

Temporal proximity can establish the causal link, but if it is the only evidence of a causal connection, the temporal proximity must be "very close." *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). A period of two months can be sufficient to satisfy the "causal connection" element of the *prima facie* case. *See, e.g., Hypolite v. City of Houston, Tex.*, 493 F. App'x 597, 606 (5th Cir. Oct. 15, 2012).

The Court assumes that Birdsell could establish a *prima facie* case.

## B.     Legitimate, Nonretaliatory Reason for Adverse Action

The burden shifts to PMSM to articulate a legitimate, nonretaliatory reason for terminating Birdsell's employment. PMSM has presented evidence that in May 2018, PMSM began negotiating with a third party regarding the sale of some of PMSM's storage and RV Park facilities. *See* Mulvaney Decl., ¶ 7. When the prospective purchaser reported some irregularities, PMSM hired a third party to conduct an audit of PMSM's books and records. *See id.* The auditors reported multiple write-offs totalling more than $7,000.00 for a single customer at the PMSM facility where Birdsell was the Property Manager. *See id.* PMSM's President, Douglas Mulvaney, met with Birdsell regarding the write-offs. *See id.* Birdsell suggested the write-offs must have been a mistake, offering no other explanation for the write-offs. *See id.* When Birdsell failed to offer a satisfactory explanation for the write-offs, his employment was terminated on June 6, 2018. *See id.* This belief that Birdsell had allowed $7,000.00 in rental write-offs without authorization was a legitimate, nonretaliatory reason for the decision to terminate his employment.

## C.     Pretext

Because PMSM has articulated a legitimate, nonretaliatory reason for its decision to terminate his employment, the burden shifts back to Birdsell to present evidence that the articulated reason is a pretext for retaliation. To establish pretext,

the plaintiff must either (1) present evidence of disparate treatment or (2) show that the employer's articulated reason is false or "unworthy of credence." *See Delaval v. PTech Drilling Tubulars, L.L.C.*, 824 F.3d 476, 480 (5th Cir. 2016); *Trautman v. Time Warner Cable Texas, L.L.C.*, 756 F. App'x 421, 429 (5th Cir. Dec. 12, 2018). "To overcome a legitimate, nondiscriminatory reason for termination, the plaintiff must show something beyond disagreement with the employer's decision." *Wittmer v. Phillips 66 Co.*, 915 F.3d 328, 332 (5th Cir. 2019).

Disparate treatment of similarly situated employees is a way to demonstrate retaliation. *See Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005). To raise an inference of pretext, the plaintiff must compare his treatment to that of nearly identical, similarly situated individuals. *See id.* Birdsell has failed to present evidence of any similarly-situated Property Managers who were believed to have given unauthorized write-offs of rent and were treated more favorably than he was.

Therefore, Birdsell must present evidence that raises a genuine issue of material fact regarding whether PMSM's articulated reason was false or "unworthy of belief." Birdsell admits that he made the write-offs for a mechanic that "ran a shop out of" the storage facility. *See* Birdsell Depo., p. 146; 147-48. Birdsell argues that when he was a district manager between 2013 and 2015, he had the authority to make write-offs. *See* Response, pp. 29-30. Birdsell testified in his deposition that, when he was

Property Manager, he would request (and usually receive) authorization for write-offs from Steven Yates, his supervisor. *See* Birdsell Depo., pp. 146-47. Birdsell does not claim to have requested Yates's authorization for the $7,000.00 in rental write-offs at issue.

Analysis of whether an alleged violation of company policy is a pretext for retaliation "does not turn on whether the employee in fact violated the policy, but rather whether the employer reasonably believed the employee violated the policy and acted based on that belief." *Chamblee v. Miss. Farm Bureau Fed'n*, 551 F. App'x 757, 760 (5th Cir. Jan. 6, 2014). "Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext." *LeMaire v. La. Dep't of Transp. & Dev.*, 480 F.3d 383, 391 (5th Cir. 2007). Indeed, "a fired employee's actual innocence of his employer's proffered accusation is irrelevant as long as the employer reasonably believed it and acted in good faith." *Cervantez v. KMGP Servs. Co. Inc.*, 349 F. App'x 4, 10 (5th Cir. Sept. 16, 2009). Here, there is no evidence in the record supporting an inference that PMSM did not reasonably believe that Birdsell improperly granted over $7,000.00 in rental write-offs to a single customer without authorization. Therefore, Birdsell has failed to present evidence that raises a genuine issue of material fact regarding pretext. PMSM is entitled to summary judgment on Birdsell's FLSA retaliation claim.

## V.     CONCLUSION AND ORDER

Plaintiffs have abandoned their minimum wage claim.

Plaintiffs have failed to present evidence that creates a triable issue regarding the reasonableness of their Employment Agreements.  It is uncontroverted that Birdsell did not advise PMSM in writing that his Employment Agreement no longer represented a fair estimate of the hours he worked.  Maier has presented evidence that she often reported that she cleaned the "1464 shopping center" property, and there is a genuine issue of material fact regarding whether those reports satisfied the requirement that she notify PMSM in writing that she believed the 45-hour provision in her Employment Agreement was no longer a fair estimate of the hours she worked. Therefore, PMSM is entitled to summary judgment on Birdsell's overtime claim, but a fact dispute precludes summary judgment on Maier's overtime claim.

Birdsell has failed to present evidence that raises a genuine issue of material fact regarding whether PMSM's legitimate, non-retaliatory reason for his discharge was a pretext for FLSA retaliation.  As a result, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 34] is **GRANTED** as to the minimum wage and retaliation claims, **GRANTED** as to Birdsell's overtime claim, and **DENIED** as to Maier's overtime claim, except that summary judgment is **GRANTED** on the issue of willfulness.  The parties are

reminded that their Joint Pretrial Order is due **August 20, 2019**, unless the case is settled prior to that time.

SIGNED at Houston, Texas, this **8th** day of **August, 2019**.

NANCY F. ATLAS
SENIOR UNITED STATES DISTRICT JUDGE